**SECOND DIVISION**
**MARKLE, J.,**
**LAND and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 12, 2025**

# In the Court of Appeals of Georgia

A24A1203. LIGHTLE et al. v. JONES.

DAVIS, Judge.

William Lightle, Phyliss Lightle, Richard Rose, and Henry Kahn (collectively "petitioners") appeal from the trial court's order denying their application for leave to file an information in the nature of a writ of quo warranto against William Burton Jones, the lieutenant governor of Georgia. On appeal, the petitioners contend that the trial court (1) failed to apply the proper procedural rules for quo warranto actions; (2) exceeded its authority by ruling on the merits of their petition without first granting their application; (3) erroneously applied precedent from this Court; and (4) wrongly concluded that their claims under the United States Constitution were not cognizable

under Georgia law. For the reasons that follow, we affirm the trial court's order denying the petitioners' application.

The record shows that the petitioners are citizens, taxpayers, and registered voters in Georgia, and Jones currently serves as the lieutenant governor of Georgia. In December 2023, the petitioners filed an "application for leave of court to file an information in the nature of a writ of quo warranto" against Jones in Butts County Superior Court. The petitioners asserted that Jones was disqualified from serving as lieutenant governor under Section Three of the Fourteenth Amendment to the United States Constitution[1] because of certain documents he executed in connection with the 2020 presidential election while serving as a state senator.[2] According to the petitioners, Jones sought to overturn the election results by "falsely and fraudulently creating and executing false writings which were submitted to authorities in the United States Congress [who were] responsible for counting the electoral votes from the [s]tate of Georgia." The trial court issued a rule nisi and set the matter for a

_____

[1] Section Three of the Fourteenth Amendment is commonly referred to as the "Insurrection Clause."

[2] The petitioners attached the petition and supporting documents to their application.

hearing. Jones filed a demurrer to the application, or alternatively, a motion to dismiss, arguing that quo warranto was not a proper remedy for alleged misconduct that occurred while he was a Georgia state senator and that the petitioners failed to state a claim upon which relief could be granted.

Following the hearing, the trial court issued an order denying the application. Specifically, although the trial court found that Jones executed certain documents in December 2020 while he served as a state senator, the court determined that, in accordance with this Court's prior decision in *Edwards v. Smith*, 369 Ga. App. 128 (892 SE2d 566) (2023), quo warranto was not a proper remedy for alleged misconduct that was committed while in office. Therefore, the court concluded that the petitioners were not entitled to any relief based on the facts asserted in the application and that they could not introduce any evidence within the framework of their application to warrant relief. This appeal followed.

1. First, in two claims of error, the petitioners argue that the trial court erred by ruling on the merits of their petition without first granting their application for leave to file their petition, and as a result, they were deprived of the opportunity to present evidence to support the petition. We conclude that these claims are without merit.

The petitioners allege that Jones is disqualified from holding public office under Section Three of the Fourteenth Amendment to the United States Constitution, which states in part, that "[n]o person shall . . . hold any office, civil or military, . . . under any State, who, having previously taken an oath, . . . as a member of any State legislature . . . to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same[.] . . ." Under this Constitutional provision, among the powers retained by the states "is the power . . . to order the processes of its own governance. In particular, the States enjoy sovereign power to prescribe the qualifications of their own officers and the manner of their election." (Citations and punctuation omitted.) *Trump v. Anderson*, 601 U. S. 100, 110 (II) (B) (144 SCt 662, 218 LE2d 1) (2024). Therefore, the United States Supreme Court has been clear that states may disqualify persons holding or attempting to hold state office under Section Three of the Fourteenth Amendment, and that the Fourteenth Amendment gives states the right to disqualify state officers "*in accordance with state statutes*." (Emphasis supplied.) Id at 110-111 (II) (B). Here, the petitioners assert that a quo warranto proceeding under OCGA § 9-6-60 is the proper vehicle by which to assert their claim that Jones is disqualified from holding public office.

4

In Georgia, "[t]he writ of quo warranto may issue to inquire into the right of any person to any public office the duties of which he is in fact discharging. It may be granted only after the application by some person either claiming the office or interested therein." OCGA § 9-6-60. A petition for a writ of quo warranto can be brought by a citizen and taxpayer, and it is an "extraordinary remedy which exists solely by virtue of statute." (Citation omitted.) *Richardson v. Phillips*, 285 Ga. 385 (677 SE2d 117) (2009). The Supreme Court of Georgia has stated that the "approved" procedure in seeking a writ of quo warranto is simply for a party to seek and obtain leave of court before the petition can be filed. *Jones v. Boone*, 297 Ga. 437, 439 (1) (774 SE2d 668) (2015); see also *Walker v. Hamilton*, 209 Ga. 735, 738 (76 SE2d 12) (1953) ("We therefore hold that in all cases of applications to file an information in the nature of a quo warranto the judge to whom it is presented is authorized to issue a rule to show cause why it should not be granted, and upon a return of the rule to hear and consider evidence relevant to the matter involved.").

We turn first to the petitioners' procedural arguments. In light of the aforementioned principles, we reject the petitioners' claims that the trial court did not follow the proper procedures in denying their application. Consistent with the

procedures established by the Supreme Court of Georgia in *Jones* and *Walker*, the trial court issued a rule nisi after the petitioners filed their application, and the court held a hearing and considered matters relevant to the application. Contrary to the petitioners' claims, there is nothing in the record to indicate that the trial court held a hearing on the merits of their petition, or ruled on the merits of the petition. As the petitioners ultimately acknowledge, at the hearing, the trial court emphasized that its only task at that point in the proceedings was to decide whether to grant the application. Moreover, in denying the application, the trial court did not address the merits of their claim that Jones did, in fact, wrongfully execute certain documents in connection with the 2020 presidential election. Instead, the trial court merely correctly concluded, for the reasons set forth *infra*, that a writ of quo warranto was not the proper vehicle to assert their claim.

Furthermore, we know of no authority, and the petitioners do not cite to any authority, requiring the trial court to grant an application for a writ of quo warranto upon the showing of any particular factors, or restricting what a trial court may consider in ruling on an application. Thus, although the petitioners contend that the trial court erred by denying their application because they established that they are

6

citizens and voters, Jones is a public official, and the trial court "implicitly" found that Jones was properly served, the trial court was not required to grant their application based on these facts. See, e.g., *Walker*, supra, 209 Ga. at 738 (affirming the denial of an application for writ of quo warranto where the party failed to show error in the trial court's ruling). Consequently, the petitioners' claim that the trial court failed to follow the proper procedures in ruling on their petition necessarily fails.

2. Second, in two other claims, the petitioners argue that the trial court erred by relying on our prior decision in *Edwards* to deny their application and by concluding that quo warranto was not the proper vehicle to assert their claim. We conclude that the trial court did not err by relying on *Edwards* in denying the petitioners' application and that quo warranto was not the proper vehicle to assert their claim against Jones.

In *Edwards*, the petitioner sought a writ of quo warranto against the District Attorney for Dougherty County, alleging that he "was discharging duties that his office was ineligible to perform." *Edwards*, supra, 369 Ga. App. at 128-129. In reversing the trial court's order granting the petition, we reasoned that a "quo warranto proceeding is about the right of the official to hold his or her public office[,]" but "quo warranto is not a proper remedy for misconduct while in office." (Emphasis

7

omitted.) Id. at 129-130 (2). We then examined the nature of the petitioner's allegations and we noted that she sought to challenge "whether an action [the district attorney] took while in office was permitted under the Georgia Constitution." Id. at 130 (2). Therefore, we concluded that the petitioner was not entitled to a writ of quo warranto because the underlying allegations in the petition did not implicate the district attorney's qualifications or his right to hold the position. Id.

Here, the petitioners alleged that Jones was disqualified from serving as lieutenant governor under Section Three of the Fourteenth Amendment to the United States Constitution because of certain documents he executed in connection with the 2020 presidential election while serving as a state senator. Specifically, the petitioners alleged that Jones, in an effort to overturn the election results, "falsely and fraudulently creat[ed] and execut[ed] false writings which were submitted to authorities in the United States Congress [who were] responsible for counting the electoral votes from the [s]tate of Georgia." Although the petitioners frame their claim as though they are challenging Jones' qualifications to hold public office, it is apparent that the underlying allegation in their application is that Jones acted improperly while serving as a state senator and wrongfully executed certain

8

documents in connection with the 2020 presidential election. Hence, like *Edwards*, the petitioners' claim does not challenge Jones' actual right to hold public office (i.e., because he did not meet the residency requirement or because his election was held contrary to Georgia law), but they instead allege that Jones committed misconduct while in office by wrongfully executing certain documents which warrants his removal. Even assuming the allegations to be true, such a claim of misconduct in office is not redressable under Georgia's quo warranto statute. See *Richardson*, supra, 285 Ga. at 386 (stating that a writ of quo warranto was not the appropriate remedy where the petitioner claimed that the county commissioner committed misconduct that warranted his removal from office under OCGA § 36-1-14 (b)); *Turner v. Wilburn*, 206 Ga. 149, 152 (b) (56 SE2d 285) (1949) (stating in a quo warranto action that "[w]here one holds a public office, a forfeiture of such office does not follow by reason of doing some particular act forbidden by statute, but must result because of some positive rule of law which declares that the doing of such act shall result in forfeiture."); *McDonough v. Bacon*, 143 Ga. 283 (84 SE 588) (1915) ("[T]he remedy by quo warranto, or information in the nature thereof, is employed only to test the actual right to an office or franchise, [and] it follows that it can afford no relief for official

misconduct, and cannot be used to test the legality of the official action of public or corporate officers.") (citation omitted). Compare *Anderson v. Flake*, 267 Ga. 498, 501-502 (2) (480 SE2d 10) (1997) (dismissal of quo warranto petition was improper where the petitioner sought to challenge a judge's qualifications to hold office on the basis that the judge did not satisfy the residency requirements).

Moreover, although the petitioners filed a supplemental brief citing two decisions in support of their claim that a quo warranto proceeding is the proper vehicle to assert their claim, none of those decisions provide a basis for us to reverse the trial court's order.

The petitioners first cite to *Trump* and argue that the trial court erred by failing to exercise its authority and address their claim regarding Section Three of the Fourteenth Amendment. But this argument is unavailing and it ignores a key portion of the *Trump* decision. As stated above in Division 1, in *Trump*, the United States Supreme Court acknowledged that state legislatures retain their independent ability to determine the eligibility criteria for state-level offices and can still choose to disqualify individuals for violations of Section Three, even absent federal legislation to that effect. However, the *Trump* decision also makes clear that the Fourteenth

Amendment has no self-executing power absent a legislative enforcement mechanism for state officeholders.[3] Indeed, the Court made it clear that although "[s]tates may disqualify persons holding or attempting to hold state office[,]" this authority is to be exercised "*in accordance with state statues*." (Emphasis supplied.) Id. at 110-111 (II) (B). There is no language in the *Trump* decision to suggest that a state's exercise of its authority under this Constitutional provision can be utilized outside of a state statute authorizing such action, and as stated above, Georgia law is clear that a quo warranto proceeding seeking to disqualify a state officeholder from public office based on allegations of misconduct is not the proper vehicle for such action.

Finally, the petitioners cite a case involving a New Mexico quo warranto proceeding which sought the disqualification of a county commissioner from office under Section Three of the Fourteenth Amendment based on his participation in the events that took place at the U.S. Capitol on January 6, 2021. *White v. Griffin*, No. D-101-CV-2022-00473, 2022 N.M. Dist. LEXIS 1, slip op. at *6-7 (1st Dist. N.M., June

---

[3] The same principle is true for federal officeholders. The *Trump* Court acknowledged that the U.S. Constitution enables Congress to pass appropriate legislation to enforce the Fourteenth Amendment and clarified that the Fourteenth Amendment has no self-executing power absent a legislative enforcement mechanism. *Trump*, supra, 601 U. S. at 110-113 (II) (B).

28, 2022), cert. denied, *Griffin v. New Mexico*, ___ U. S. ___ (144 SCt 1056, 218 LE2d 240) (2024). But in relying on *White*, the petitioners misconstrue the significant differences between the New Mexico quo warranto statute and Georgia's quo warranto statute. In granting quo warranto relief and disqualifying the county commissioner from public office under Section Three of the Fourteenth Amendment, Id. at * 44-45 (II) (11) - (12), the court noted that under *New Mexico's quo warranto statute*, a quo warranto action is proper against "any public officer, civil or military, who shall have done or suffered an act which, by the provisions of law, shall work a forfeiture of his office." (Citation omitted.) Id. at *41 (I) (A) (1); see NMSA 1978 § 44-3-4 (B). The court further noted that New Mexico's quo warranto statute "*authorizes courts to make a judicial finding that an official has engaged in conduct resulting in their forfeiture of office due to constitutional disqualification.*" (Emphasis supplied.) *White*, supra, slip op. at *42-43 (I) (A) (6). Thus, New Mexico's quo warranto statute clearly permits quo warranto actions to disqualify a public official from holding office based on a judicial finding that the official engaged in misconduct that would require the official's removal from office. Unlike New Mexico's quo warranto statute, there is no language in Georgia's quo warranto statute that

authorizes a quo warranto action based on misconduct committed by a public officer, see OCGA § 9-6-60, and the courts of this state have consistently interpreted our quo warranto statute to deny petitions for a writ of quo warranto based on misconduct. See *McDonough*, supra, 143 Ga. at 283; *Edwards*, supra, 369 Ga. App. at 129-130 (2). Consequently, in light of this key distinction between Georgia's quo warranto statute and New Mexico's quo warranto statute, the New Mexico court's decision in *White* does not provide any support for the petitioners' quo warranto application in this matter, and for the reasons stated above, we conclude that the trial court did not err in its determination that a quo warranto proceeding was not a proper vehicle for the petitioners to assert their claim.

We emphasize that our decision does not reach the merits, or lack thereof, of the petitioners' claim. Our holding only addresses whether a quo warranto action is the proper vehicle to seek the disqualification of state officeholders based on allegations of misconduct. It is not. Accordingly, for the foregoing reasons, we affirm the trial court's order denying the petitioners' application for leave to file a petition for a writ of quo warranto.

*Judgment affirmed. Markle and Land, JJ., concur.*